UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA R. BYAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1238 AGF |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before this Court[1] for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Rhonda Byas was not disabled

and, thus, not entitled to supplemental security income under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381-1383f.  For the reasons set forth below, the decision of

the Commissioner shall be reversed and the case remanded for further consideration.

Plaintiff, who was born on September 11, 1954, filed for benefits on May 17,

2005, at the age of 50, alleging a disability onset date of May 1, 2005, due to hearing

deficits, Hepatitis C, irritable bowel syndrome, headaches, left eye dysfunction, acid

reflux, a sleep disorder, bipolar disorder, depression, anxiety, and substance abuse.  After

Plaintiff's application was denied at the initial administrative level, she requested a

hearing before an Administrative Law Judge ("ALJ") and such hearing was held on May

---

[1]    The parties have consented to the exercise of authority by the undersigned
United States Magistrate Judge under 28 U.S.C. § 636(c).

9, 2006. At the hearing, Plaintiff, who was represented by counsel, amended her

disability onset date to March 23, 2006, at the suggestion of the ALJ. By decision dated

July 29, 2006, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

to perform light work that was semi-skilled or unskilled, including her past work as an

office clerk. Plaintiff's request for review by the Appeals Council of the Social Security

Administration was denied on July 31, 2008. Plaintiff has thus exhausted all

administrative remedies and the ALJ's decision stands as the final agency action now

under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence.

Specifically, Plaintiff argues that the ALJ did not properly weigh the opinions of her

treating psychiatrist and other medical sources regarding Plaintiff's mental limitations,

did not properly assess Plaintiff's physical and mental RFC, failed in his duty to fully and

fairly develop the record, failed to properly consider third-party evidence and the side

effects of Plaintiff's medications, and did not properly compare Plaintiff's RFC to the

demands of her prior work.

## BACKGROUND

### Work History and Application Forms

On a form submitted in connection with her application for benefits, Plaintiff

represented that she had worked at various jobs, including as a full-time office clerk from

1978 to 1983 at six dollars per hour and as a full-time cosmetologist from 1987 to 1990 at

eight dollars per hour. (Tr. 150). On another form, she indicated that she had worked as

2

a full-time clerical worker "off and on" from 1989 to 1999 earning approximately $4,500 per year, and off and on as a cosmetologist from 1988 to 1992 earning $1,200 per year. (Tr. 165). She stated that she was usually fired from her jobs because she was late or called in sick and "had an extremely difficult time functioning like others." (Tr. at 136). She also wrote that she lost jobs due to an inability "to focus and function" and get to jobs on time due to poor sleep, and that she "kept failing at most attempts to keep jobs." (Tr. 149.)

Earnings records from the years 1978 through 2001 show erratic annual earnings from a low of approximately $2,000 to a high of approximately $9,000, with no earnings in 1993 through 1996, virtually no earnings in 1991 through 1992 and 1999 through 2001, and no earnings after 2001. (Tr. 68.)

On her application forms, Plaintiff wrote that she did not do very much each day, that her medications made her confused, that many days all she could do was sleep, and that for meals, she prepared TV dinners, sandwiches, or cereal. She did not use the stove because she was afraid she might fall asleep and leave it on. Plaintiff wrote that she sometimes cleaned her apartment, washed her dishes, and did her own laundry, but she sometimes needed family members to remind her to do these chores. She never did outdoor chores, and she usually got help to go shopping. (Tr. 132-33, 146.)

Plaintiff's mother submitted a third-party function report dated July 4, 2005, in which she reported that Plaintiff had suffered from depression since the age of 13. She seemed to be doing better in 2001, but then her car accident set her back. Plaintiff

needed reminders to change clothes, take her medications, clean her house, and help with most household chores.  Plaintiff's mother wrote that Plaintiff seemed to be withdrawn from friends and family members, did not handle stress or changes in routine well, had headaches and nausea from Interferon, seemed to have lost her desire to live, and had "severe mood swings."  (Tr. at 125-31.)

**Medical Record**

The record indicates that Plaintiff received psychiatric treatment on an outpatient basis in approximately 1980 for depression, and was under the care of a psychiatrist ever since then.  She was hospitalized in a psychiatric unit in 1986, and again for one week in 1993 for suicide ideation and an overdose.  (Tr. 199.)

On December 29, 2002, Plaintiff was in a major head-on motor vehicle accident, in which two people in the other car were killed, and Plaintiff sustained multiple traumas, including facial fractures, closed head injury, left clavicle fracture, and left rib fractures. She was discharged from the hospital on January 2, 2003, and continued to receive treatment from various physicians for numerous residual problems including persistent headaches, visual problems, hearing loss, facial nerve paralysis, and right shoulder and ankle pain.  (Tr. 493, 160-63.)

Plaintiff was treated by psychiatrist Dawn Holeman, M.D., from October 2002 through November 2004, during which time Plaintiff reported problems with poor sleep and depression.  (Tr. 180, 289-301.)  In March 2005, Plaintiff was admitted to the psychiatric service of a hospital for depression and cocaine addiction.  While in the

4

hospital, she came under the care of psychiatrist Patrick Oruwari, M.D., who noted that

Plaintiff's problems included hepatitis C, gastroesophageal reflux disease ("GERD"),

depression, and cocaine addiction. (Tr. 401-03.)  Plaintiff thereafter saw Dr. Oruwari

regularly for medical management, and reported numerous problems including

depression, mania, difficulty sleeping, weight gain, tremors, poor concentration, and

restlessness in her legs.  He increased Plaintiff's dosage of Seroquel several times and

added prescriptions for Cymbalta, LiCO3, Trileptal, Stratera, and Clonazepam.  Dr.

Orurawi's treatment notes routinely indicated that Plaintiff appeared calm and well-

groomed, with normal mood and good flow of thought and judgment.  (Tr. 172-74, 277-

80.)  On November 7, 2005, Dr. Oruwari assessed a Global Assessment of Functioning

("GAF") of 60.[2]  (Tr. 278.)

Plaintiff continued to see Dr. Oruwari until the date of the hearing.  In conjunction

with her medical management, Plaintiff regularly saw Mary Montgomery, R.N., M.A., for

individual and group counseling.  Plaintiff repeatedly complained of depression and poor

sleep.  (Tr. 175-87, 282-94A.)

---

[2]     A GAF score represents a clinician's judgment of an individual's overall
ability to function in social, school, or occupational settings, not including impairments
due to physical or environmental limitations.  Diagnostic & Statistical Manual of Mental
Disorders (4th ed.) (DSM-IV) at 32.  GAF scores of 31-40 indicate "[s]ome impairment
in reality testing or communication or "major" impairment in social, occupational, or
school functioning; scores of 41-50 reflect "serious" impairment in these functional areas;
scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild"
impairment.

Meanwhile, on May 24, 2005, Plaintiff complained to another doctor of severe headaches that had been occurring for approximately one year.  Her diagnosis included left facial neuralgia, left conductive hearing loss, and bipolar disorder.   (Tr. 647.)  On June 30, 2005, Plaintiff began treatment for hepatitis C with Interferon shots and Ribavirin.  During the course of the treatment regimen, which ran through at least March 2006, Plaintiff was positive for fatigue, weight gain, dyspnea on exertion, GERD, joint pain, sleep disturbance, and moodiness and depression.  (Tr. 248-57.)

On August 26, 2005, non-examining state-agency consulting psychologist Judith McGee, Ph.D., completed a Mental RFC assessment and a Psychiatric Review Technique form, indicating in both that Plaintiff had no marked functional limitations, and moderate limitations in the ability to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods.  Dr. McGee found no other significant limitations in mental function, and opined that Plaintiff retained the RFC "for simple work without limitations in social functioning."  (Tr. 100-16.)

On January 9, 2006, Plaintiff was seen by Eric Mai, M.D.,[3] who noted that Plaintiff had abdominal pain with tenderness; and facial and head injuries from the motor vehicle accident in 2002, resulting in memory loss, elevated blood pressure, and hearing loss.  Dr. Mai prescribed medications for restless leg syndrome and GERD.  (Tr. 237-38.)

On February 9, 2006, Nurse Montgomery reported that Plaintiff felt sad and "out

---

[3]    The record does not indicate Dr. Mai's area of medicine.

of sorts," complained of crying spells, was concerned about her self-image, had gained a great deal of weight, and had no interest in dressing or wearing make-up. Plaintiff reported that there had been six deaths in her circle of friends and family within the past three or four months, and that her husband had filed for divorce. (Tr. 282.) On that same day, February 9, 2006, Dr. Oruwari diagnosed bipolar disorder, cocaine abuse, peptic ulcer disease, and a current GAF of 60, with her lowest GAF in the previous year being 55. (Tr. 277.)

In a Medical Source Statement dated March 8, 2006, Ms. Montgomery indicated that Plaintiff had marked limitations in two of four areas of activities of daily living; in one area of social functioning; and in four areas of concentration, persistence and pace. Ms. Montgomery opined that Plaintiff was moderately limited in the remaining two areas of activities of daily living and one area of social functioning. Ms. Montgomery was unsure if Plaintiff would be able to maintain regular attendance and be punctual, noting that Plaintiff was still dealing with physical ailments/injuries from the car accident. Ms. Montgomery opined Plaintiff had a substantial loss in her ability to respond appropriately to supervision, co-workers, and usual work situations; and in her ability to deal with changes in a routine work setting. She indicated that Plaintiff's limitations had lasted or could be expected to last for 12 continuous months, and noted that Plaintiff had been assessed a GAF of 60/55 (by Dr. Oruwari) on February 9, 2006, and that her highest GAF in 2005 had been 50. Id. 244-47.

On February 26, 2006, Plaintiff visited the emergency room for bilateral rib pain

7

after falling onto the Metrolink tracks. She also hit her head and chest during the fall. A CT head scan showed mild diffuse atrophy similar to that of a previous CT. (Tr. 212-15, 223.)

Dr. Mai completed a Mental Medical Source Statement on March 21, 2006, opining that Plaintiff was markedly limited in two of four areas of activities of daily living, in three of four areas of social functioning, and in all areas of concentration, persistence and pace. Dr. Mai opined Plaintiff was moderately limited in one of the two remaining areas of activities of daily living and in the remaining area of social functioning. Dr. Mai represented that in the past year, Plaintiff had suffered from four or more episodes of decompensation that lasted at least two weeks. Dr. Mai opined that Plaintiff had a substantial loss in her ability to understand, remember and carry out simple instructions; make judgments commensurate with the functions of unskilled work; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. Dr. Mai opined that the assessed limitations had or could be expected to last for 12 continuous months. (Tr. 231-34.)

On March 23, 2006, Plaintiff was seen by David A. Lipsitz, Ph.D., upon referral by her attorney for a psychological consultative evaluation. Dr. Lipsitz observed that Plaintiff showed no difficulty with posture or gait. Plaintiff was on Interferon at the time and reported that the side effects had been "horrendous." Her interest and energy levels were diminished. She told Dr. Lipsitz that she had been off cocaine for two years. She was currently taking numerous medications: Cymbalta, Evista, Lithium, Loratidine,

Metrochlopramide, Ranitidine, Seroquel, Stratera, Trileptil, Aciphex, Interferon, Procrit, Ribazira, and Requit. It was noted that Plaintiff had been hospitalized on three occasions for psychiatric treatment.

Upon mental status examination, Plaintiff showed no signs of active psychosis or suicidal ideation, but she appeared to be "in some acute distress" and her mood was depressed. She demonstrated some memory problems, particularly for short-term events, and her concentration was poor. Dr. Lipsitz diagnosed bipolar disorder, post-traumatic stress disorder, and a GAF of 40. (Tr. 198-201.)

In an accompanying Mental Medical Source Statement, Dr. Lipsitz indicated that Plaintiff was markedly limited in all but two areas of concentration, persistence and pace; and moderately limited in all areas of activities of daily living and in all areas of social functioning. Dr. Lipsitz indicated that Plaintiff had a substantial loss in her ability to respond appropriately to co-workers and usual work situations, and deal with changes in a routine work setting. He opined Plaintiff's limitations had existed at the assessed severity since August 2002. (Tr. 198-203.)

On April 8, 2006, Dr. Oruwari completed a Mental Medical Source Statement in which he indicated in checkbox format that Plaintiff was extremely limited in her ability to cope with normal work stress and to work in coordination with others; and markedly limited in the remaining three of four activities of daily living, in all areas of social functioning, and in five of nine areas of concentration, persistence, and pace. He further indicated that Plaintiff had suffered from four or more episodes of decompensation in the

past year. Dr. Oruwari opined that Plaintiff had a substantial loss in her ability to respond appropriately to supervision, co-workers and usual work situations; and in her ability to deal with changes in a routine work setting. In Dr. Oruwari's opinion, these limitations had existed since October 2002. (Tr. 193-96.)

**Evidentiary Hearing of May 9, 2006** (Tr. 725-60)

At the beginning of the hearing, Plaintiff indicated that she was having difficulty hearing what was being said between the ALJ and her attorney. Plaintiff's counsel noted that Plaintiff had a hearing aid in her left ear. He and the ALJ stated that they would speak louder, and Plaintiff indicated that she could hear better and would try to read their lips, too.

Plaintiff testified that she was 51 years old, was 5' 5" tall, and weighed 230 pounds, having gained approximately 70 pounds in the last year due to the medications she was taking. She was currently living alone in an apartment and was receiving food stamps and Medicaid. Plaintiff testified that she had graduated high school and taken some nursing classes at various community colleges, and had used this training while working as a medical assistant.

The ALJ asked Plaintiff's counsel if he had considered asserting a later onset date than May 2005. The ALJ stated that his reason for asking was that the record showed GAF scores of 60/55 in February 2006, and thus did not indicate that Plaintiff had disabling psychiatric problems until her consultative examination on March 23, 2006, which showed a GAF of 40. The ALJ and Plaintiff's counsel proceeded to discuss the

evidence as it related to Plaintiff's psychiatric problems.  Plaintiff confirmed that Dr. Mai

was a general practitioner.  The ALJ suggested that treatment records from before the

date Plaintiff had filed her application for SSI (May 2005) were really irrelevant.  He

asked Plaintiff if she was taking all the medications on her medication list submitted to

the ALJ (Tr. 94-95),[4] and she responded in the affirmative, noting that she had been

taking most of them for at least a year.

Following a conference with her attorney, Plaintiff amended her alleged onset date

to March 23, 2006.  The ALJ then asked Plaintiff if she was currently receiving

appropriate treatment.  Plaintiff stated that she was seeing Dr. Oruwari and Ms.

Montgomery and was going to individual and group counseling at least once a week.  She

stated that she would like to go back to work, but that she has been overwhelmed due to

depression and several recent deaths in her family.

**ALJ's Decision of June 6, 2006** (Tr. 12-20)

The ALJ noted that there was no evidence of any ongoing pursuit of significant

medical care for Plaintiff's physical ailments, since her (amended) alleged disability onset

date of March 23, 2006.  He then summarized the medical evidence relevant to Plaintiff's

cranial impairments (hearing loss, problems with her left eye, and headaches), Hepatitis

C, gastrointestinal disorder, and emotional/mental disorder.

The ALJ then stated that Plaintiff also failed to provide evidence that she sought

---

[4]    The list essentially includes the medications noted by Dr. Lipsitz in his March
23, 2006 report, set forth above.

ongoing care by an accepted medical source since her alleged onset date with respect to her emotional/mental disorder. He believed that Dr. Oruwari's February 9, 2006 opinion that Plaintiff had marked to extreme limitations in numerous areas of functioning was inconsistent with clinical findings during that time, which routinely stated that Plaintiff was calm and cooperative, with normal speech and normal flow and content of thought. The ALJ also believed that Dr. Oruwari's opinion was inconsistent with Dr. Oruwari's own diagnosis of a GAF of 60.

Similarly, the ALJ found that the March 2006 medical source statement of Ms. Montgomery was inconsistent with the GAF she assessed: although Ms. Montgomery opined that Plaintiff was markedly limited in numerous areas of functioning, she assigned (according to the ALJ) a GAF of 50 to 55, which suggested only moderate symptomatology. The ALJ also noted that the death of numerous friends and family members at the time of this GAF assessment could have contributed as situational stressors, and that it was reasonable to assume that Plaintiff would function at a greater level over time after those stressors.

The ALJ dismissed Dr. Mai's source statement, which also concluded that Plaintiff was markedly limited in numerous areas of functioning, because the statement did not make any references to dates of care or "clinically significant mental status finding," and because Dr. Mai was treating Plaintiff primarily for physical ailments as opposed to emotional/mental concerns.

The ALJ found that Plaintiff had the following impairments, one or more of which

12

were "severe," as that term is defined in the Commissioner's regulations, in that they impose significant limitations on her ability to function in the work-place: status post head injuries in 2002 and 2006, esophagitis, GERD, gastritis, hepatitis C, bipolar disorder, and a history of cocaine abuse. He found, however, that none of these impairments, singly or in combination, met or equaled a deemed-disabling impairment listed in the Commissioner's regulations, 20 C.F.R. § 404, Pt. 404, Subpt. B, App. 1 ("Appendix 1").

Citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), as setting forth the relevant factors in evaluating the credibility of a claimant's allegations, the ALJ stated that he found it significant that the record did not show that Plaintiff diligently pursued treatment, which, according to the ALJ, "tended to suggest tolerable symptomatology." The ALJ also stated that he found significant Plaintiff's continued ability to engage in a variety of daily activities, such as personal care, preparing meals, and cleaning her apartment. The ALJ found that Plaintiff's poor work history detracted from a finding that disability was the cause of her not working. In sum, the ALJ concluded that Plaintiff's subjective complaints were not "fully credible."

The ALJ found that the claimant had the RFC to perform semi-skilled or unskilled light work (or work requiring the ability to lift 20 pounds occasionally and ten pounds frequently, standing and/or walking for about six hours in an eight-hour workday, and sitting unlimitedly). He found that Plaintiff's depression was not a deemed-disabling impairment under the Commissioner's regulations, Listing 12.04 of Appendix 1, because

her condition did not satisfy the "B" criteria of the listing[5] in that her limitations were only mild to moderate in the relevant functional areas, and there was evidence of only one or two episodes of decompensation. The ALJ further found that the record failed to establish the presence of the "C" criteria.

The ALJ concluded that Plaintiff's RFC allowed for her to perform the job requirements of her past relevant work as an office clerk, and that she was therefore not disabled under the Social Security Act.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the

---

[5] Under the Commissioner's regulations, an affective disorder such as depression is deemed disabling if "A" criteria and "B" criteria are met, or if "C" criteria are met. 20 C.F.R. § 404, Pt. 404, Subpt. B, App. 1 ("Appendix 1"), Listing 12.04. "A" criteria (medical findings) are met if there is a medically documented persistence of a depressive, manic, or bipolar syndrome. "B" criteria (functional limitations) are met if there is a marked functional limitation in at least two of the following four categories: (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) repeated episodes of decompensation, each of extended duration. "C" criteria are met if the disorder has been of at least two years duration with either (1) repeated episodes of decompensation, (2) such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or (3) one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th

Cir. 1989)). The court's review "'is more than an examination of the record for the

existence of substantial evidence in support of the Commissioner's decision'"; the court

must "'also take into account whatever in the record fairly detracts from that decision.'"

Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)).

Reversal is not warranted, however, "'merely because substantial evidence would have

supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th

Cir. 1995) (citation omitted)).

> It is not the role of [the reviewing] court to reweigh the evidence presented
> to the ALJ or to try the issue in this case de novo. If after review, [the
> court] find[s] it possible to draw two inconsistent positions from the
> evidence and one of those positions represents the Commissioner's
> findings, [the court] must affirm the denial of benefits.

Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in

any substantial gainful activity which exists in the national economy, by reason of a

medically determinable impairment which has lasted or can be expected to last for not

less than 12 months. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-

22 (2002). The Commissioner has promulgated regulations, found at 20 C.F.R.

§ 404.1520, establishing a five-step sequential evaluation process to determine disability.

The Commissioner begins by deciding whether the claimant is engaged in substantial

gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments. A severe impairment

is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c)(3).

If the claimant does not have a severe impairment or combination of impairments that meets the duration requirement, the claim is denied. If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in the Commissioner's regulation, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is conclusively presumed to be disabled. Otherwise, the Commissioner asks at step four whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work, if any. If the claimant can return to past relevant work, the claimant is not disabled. Otherwise, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant has the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Commissioner's Guidelines, which are fact-based generalizations about the availability of jobs for people

of varying ages, educational backgrounds, and previous work experience, with differing

degrees of exertional impairment.  Where a claimant cannot perform the full range of

work in a particular category due to nonexertional impairments such as depression, the

Commissioner cannot carry the step-five burden by relying on the Guidelines, but must

consider testimony of a vocational expert ("VE") as to the availability of jobs that a

person with the claimant's profile could perform.  Baker v. Barnhart, 457 F.3d 882, 888

n.2, 894-95 (8th Cir. 2006).  Here, the ALJ decided at step four that Plaintiff could return

to her previous work as an office clerk.

**Weight Given Medical Opinions/Duty to Develop the Record**

Plaintiff argues that the ALJ should have given controlling weight to Dr. Oruwari's

opinion, expressed in his April 8, 2006 Mental Medical Source and Psychiatric Review

Technique forms, that Plaintiff had extreme and marked limitations, because Dr. Oruwari

was her treating psychiatrist.  Plaintiff points to the fact that Dr. Oruwari's opinion was

essentially consistent with those of Nurse Montgomery and Drs. Mai and Lipsitz, whose

opinions, Plaintiff argues, the ALJ also erred in discounting.  Plaintiff points out that the

ALJ did not explain the weight given - or not given - to Dr. Lipsitz' opinion.  As noted

above, the ALJ discounted all of the opinions of Dr. Oruwari and Nurse Montgomery on

the ground that they were inconsistent with the GAF of 55/60 assessed by Dr. Oruwari.

In evaluating medical opinion evidence, the ALJ is to consider the nature and

extent of the examining/treatment relationship, the supportability of the opinion, the

consistency of the opinion with the rest of the record, and the specialization of the

medical source.  20 C.F.R. § 404.1527(d).  The ALJ is to give a treating medical source's opinion on the issues of the nature and severity of an impairment controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Id.  A treating physician's opinion that is inconsistent with the physician's own treatment notes need not be credited by an ALJ.  Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001).

Plaintiff also argues that the ALJ failed in his duty to fully and fairly develop the record by not re-contacting Plaintiff's treating sources who opined that she had extreme and/or marked functional limitation due to mental/psychological problems.  In considering an argument that an ALJ has failed to develop the record fully, the relevant inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, [a court should] not remand."  Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993) (citing Phelan v. Bowen, 846 F.2d 478, 481 (8th Cir.1988)); accord Haley v. Massanari, 258 F.3d 742, 750 (8th Cir. 2001).

The Court believes that here, where three treating and examining physicians, as well as Plaintiff's nurse/therapist, agreed that Plaintiff had marked, and even extreme, limitations in mental work-related activities, it was incumbent upon the ALJ to re-contact these medical sources before relying on the contemporaneous GAF of 60 (assessed by Dr. Oruwari) in finding that Plaintiff was not disabled.  See Burchard v. Astrue, No.

1:08CV87 SNLJ/LMB, 2009 WL 2836531, at *17 (E.D. Mo. Aug. 28, 2009). Very

significantly, the ALJ failed, as Plaintiff states, to explain the weight he accorded - or did

not accord - the March 23, 2006 opinion of Dr. Lipsitz, who assigned a GAF of 40. The

date of this evaluation coincides with Plaintiff's alleged disability onset date, as amended.

The Commissioner's argument before the Court (Def. Br. at 8-9.) that Dr. Lipsitz's

findings do not support Dr. Oruwari's opinion that Plaintiff suffered from some work-

related marked and extreme functional limitations is totally unpersuasive.

The Court also finds problematic the ALJ's reliance on Plaintiff's reported daily

activities to find that she was not disabled. Her reported activities were much more

limited than represented by the ALJ. For example, the ALJ stated that Plaintiff was able

to cook, whereas, Plaintiff reported that she prepared TV dinners, sandwiches, and cereal

for her meals.

Upon review of the entire record, the Court concludes that this case should be

reversed and remanded for the ALJ to formulate a new mental RFC for Plaintiff based on

the medical evidence in the record, and to order, if needed, additional medical

information from Plaintiff's medical sources or from a medical expert, addressing

Plaintiff's mental ability to function in the workplace. See Burchard, 2009 WL 2836531,

at *17.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence on the

record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED** and that the case is **REMANDED** for further consideration.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 16th day of September, 2009.